UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KY'SHAWN H.,

    Plaintiff,

v.

ACTING COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. 3:21-cv-05091-RSM

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI"). This matter is fully briefed. *See* Dkts. 12-14.

Plaintiff has the severe impairment of Tetralogy of Fallot status post-valve replacement and pacemaker implant. *See* AR 22. Plaintiff's pacemaker appears to be functioning properly, but he has minimal RV reduction on echocardiogram and he reports severe fatigue and problems with oxygen intake. There is not substantial evidence in the record for the ALJ's finding that cardiac exams characterized as unremarkable warrant a rejection of the opinions of an examining

cardiac physician regarding plaintiff's functional limitations related to fatigue as there is the objective support in the record from plaintiff's Cardiopulmonary Exercise Test ("CPET") and echocardiogram for the examining cardiac physician's opinion.

For this reason and other reasons discussed further herein, the Court concludes that this matter shall be reversed and remanded for further Administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

On June 19, 2018, plaintiff filed an application for SSI, alleging disability as of March 24, 2000, later amended to June 19, 2018. *See* Dkt. 10, Administrative Record ("AR"), p. 20. The application was denied on initial administrative review and on reconsideration. *See* AR 20. A hearing was held before Administrative Law Judge Rebecca L. Jones ("the ALJ") on July 28, 2020. *See* AR 38-72. In a decision dated August 21, 2020, the ALJ determined plaintiff to be not disabled. *See* AR 17-37. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* AR 1-6; 20 C.F.R. § 404.981, § 416.1481.

In plaintiff's Opening Brief, plaintiff maintains the ALJ erred by: (1) rejecting the medical opinion of plaintiff's treating cardiologist, Yonatan Buber, MD; (2) given greater weight to the DDS State Agency reviewing physicians' opinions regarding functional limitations than to Dr. Buber's opinion; (3) requesting post-hearing evidence but not waiting for its submission prior to issuing the decision; (4) erroneously stating that she assumes Dr. Powers' opinion was not supportive of plaintiff's disability claim; and (5) basing her assessment of plaintiff's credibility on an erroneous claim that plaintiff's activities showed greater capacity than his alleged limitations would allow. "Open," Dkt. 12, pp. 1-2. Defendant contends substantial evidence supports the ALJ's evaluation of the evidence. "Response," Dkt. 13, p. 1.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quoting *Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

DISCUSSION

**I.    Whether the ALJ erred when evaluating the medical opinion evidence provided by Dr. Yonatan Buber, M.D.**

Plaintiff contends that the ALJ erred when evaluating the medical evidence, such as the medical opinion evidence provided by Dr. Yonatan Buber, M.D. Open, Dkt.12, pp. 2-5. Defendant contends that substantial evidence supports the ALJ's finding that the September 2019 opinion of Dr. Buber was unpersuasive. Response, Dkt. 13, pp. 4-13.

In 2017, the Commissioner issued new regulations governing how ALJs are to evaluate medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). That explanation must be legitimate, as the Court will not affirm a decision that is based on legal error or not supported by substantial

evidence. *See Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Thus, the regulations require the ALJ to provide specific and legitimate reasons to reject a doctor's opinions. *See also Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) (unpublished opinion) (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the *Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence).

As plaintiff filed the claim on June 19, 2018, the ALJ applied the new regulations. *See* AR 20. Therefore, based on the above considerations, the Court will determine whether the ALJ's decision is free of legal error and supported by substantial evidence. "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quoting *Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

On September 5, 2019, Dr. Yonatan Buber, M.D., cardiologist, evaluated plaintiff as a new patient to establish care. *See* AR 3615. Dr. Buber included the following note in the treatment record:

> I saw and evaluated [plaintiff] and agree with Dr. Dolgner's note. [Plaintiff] has a Tetralogy of Fallot with mild-moderate RV dysfunction, normally functioning prosthetic pulmonary valve, and normal LV function. His exercise capacity, as demonstrated by today's CPET, is moderately reduced, and he suffers from chronic fatigue with difficulty to focus and work for more than 2-3 hours. He also has neurocognitive dysfunction, and we encouraged his mother today to have them seen at a neurocognitive clinic.

*Id*.

Earlier in the treatment note, the record indicates plaintiff was referred to the University of Washington Medical Center Heart Institute ("UWHI") Cardiology clinic to establish care,

where he "had an exercise test," and "was limited on this by his breathing." AR 3611. Dr. Stephen Dolgner, M.D., indicated his final assessment, including that plaintiff "has mostly intact AV conduction," and that plaintiff's "main symptom currently is dyspnea on exertion." AR 3614. Dr. Dolgner indicated that plaintiff's "recent echocardiogram does not identify a clear cause of this [main symptom] and showed good bioprosthetic pulmonary valve function." *Id*. Dr. Dolgner however did note that on the echocardiogram, "RV function was moderately reduced." *Id.* Dr. Dolgner also indicated that plaintiff's CPET today showed a very limited exercise capacity with the V02 max of 1980 ml/min, which is 19 mil/kilogram/min." *Id*. Although Dr. Dolgner assessed that heart rate is not the limiting factor for plaintiff in exercise, "his 02 pulse, a surrogate of stroke volume, was decreased, indicating that potentially his RV cannot augment his stroke volume adequately with exercise." *Id*. The treatment record reflects that plaintiff "did appear to give a maximal effort," on his CPET and "stopped due to [shortness of breath]." AR 3618.

In a separate submission, Dr. Buber on September 5, 2016 indicated that plaintiff's impairments resulted in limitations including up to 2 hours of standing and walking during an 8 hour workday, sitting upright for 2 to 4 hours during an 8 hour workday, and needing to recline about 2 hours during an 8 hour workday. *See* AR 3600-601.

The ALJ discussed this record in her written decision:

> On September 5, 2019, Yonatan Buber, M.D., completed a medical source statement regarding the claimant's functional capabilities stating the claimant had significant limitations including standing/walking about two out of eight hours, sitting two to four hours out of eight hours, and absenteeism of three or more workdays per month (Ex. 18F). This was filled out after the claimant's first visit to the UWMC Heart Institute to establish care in September 2019 (Ex. 19F). Dr. Buber may have been in attendance at the September 5, 2019 office visit, but Dr. Dolgner primarily conducted the examination and it is his progress notes (not Dr. Buber's) in the UWMC records (Ex. 19F/5). Since this was the claimant's first visit to establish care at UWMC, these doctors had no longitudinal treating history

      with the claimant and, thus, this assessment appears to be heavily based on the mother's statements regarding the claimant's limits, which are inconsistent with the objective evidence and the claimant's demonstrated functioning. Specifically, Drs. Powers and Dolgner had essentially unremarkable cardiac exams (Exs. 4F/3,17F/3 and 19F/5) and Dr. Powers repeatedly noted he was doing well/fairly well clinically, and his pacemaker was functioning appropriately (Exs. 4F/4, 7F/3, and 17F/4).

AR 30.

      It is unclear if the ALJ intends to rely on which doctor conducted the examination and whose progress notes are in the record as a factor for failing to credit fully the opinions from Dr. Buber. *See id*. However, as it is very common for multiple doctors to be present during examinations, especially in teaching hospitals, and as the ALJ did not explicitly rely on this factor, nor explain why it would entail a legitimate rationale for failing to credit fully this cardiologist's opinion, the Court concludes that it provides no support for the ALJ's failure to credit fully the medical opinions of plaintiff's cardiologist Dr. Buber. The Court also notes that new evidence not available to the ALJ prior to the ALJ's written decision from Dr. Buber effectively rebuts the ALJ's rationale and evidences that Dr. Buber "was present as the attending provider [while] Dr. Dolgner was the fellow at the time." *See* AR 16; *see also id.* (Dr. Buber opines after treating plaintiff for over a year that clinical findings and objective findings support the opinions presented in Dr. Buber's 09/05/2019 letter); *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) ("when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether [or not] the Commissioner's decision is supported by substantial evidence").

Next, the ALJ appears to rely on the fact that it was plaintiff's first visit to establish care, and therefore "these doctors had no longitudinal treating history with [plaintiff] and, thus, this assessment appears to be heavily based on the mother's statements regarding [plaintiff's] limits . . . ." AR 30. Although it is true that Drs. Buber and Dolgner did not have a longitudinal treating history with plaintiff, it also is true that neither did any of the State agency medical consultants, whose medical opinions appear to be the only ones not discredited fully and the only ones relied on by the ALJ in the ALJ's written decision. *See* AR 30-31. Therefore, this factor alone cannot explain the ALJ's crediting the State agency medical consultants' opinions over the examining and treating doctors' opinions. This factor also is rebutted effectively by the new evidence just discussed, submitted after Dr. Buber had established a longitudinal relationship with plaintiff, *see supra*. *See* AR 16 (Dr. Buber opines after treating plaintiff for over a year that clinical findings and objective findings support the opinions presented in Dr. Buber's 09/05/2019 letter).

The ALJ also concludes that the assessments from Drs. Buber and Dolgner appear to be heavily based on the mother's statements because it was the first treatment session. *See id*. However, Dr. Dolgner explicitly indicates reliance on objective testing results when making his opinion: Dr. Dolgner indicated that plaintiff's "CPET today showed a very limited exercise capacity with VO2 max of 1980 . . . . [and] his 02 pulse, a surrogate of stroke volume, was decreased, indicating that potentially his RV cannot augment his stroke volume adequately with exercise." AR 3614. Dr. Dolgner also indicated that in plaintiff's recent echocardiogram, "RV function was moderately reduced." *Id*. Similarly, Dr. Buber indicates in his assessment that plaintiff's moderate reduction in exercise was "demonstrated by today's CPET." AR 3615. Therefore, the ALJ's presumption that because it was the first appointment the doctors relied on plaintiff's mother's reports is not based on substantial evidence. To the contrary, the record

instead reflects the doctors explicitly indicated reliance on objective medical testing. Although the ALJ also found that the mother's statements were inconsistent with other evidence, this factor does not support the ALJ's failure to credit fully the medical opinions, as these doctors did not rely on the mother's statements. Even if these purported inconsistent notes regarding unremarkable cardiac exams, doing fairly well, and having a pacemaker that was functioning appropriately were relied on properly by the ALJ, the ALJ did not explain how these factors are inconsistent with the opinions from Drs. Dolgner and Buber. Indeed, although the ALJ may seek to rely on a categorization of a cardiac exam as "unremarkable," the medical fellow who specializes in adult congenital heart disease opined that the reduced RV function in plaintiff's recent echocardiogram, combined with his decreased 02 pulse, indicated "that potentially [plaintiff's] RV cannot augment his stroke volume adequately with exercise." AR 3614. The Court concludes based on the record that the ALJ's categorization of plaintiff's cardiac exam results as unremarkable, as well as the fact that plaintiff's pacemaker was functioning appropriately, are not factors that demonstrate any inconsistency with the opinions from Drs. Dolgner and Buber, and do not explain why these opinions were not credited fully in the ALJ's written decision. *See* AR 30.

      The ALJ also finds that the absence of an assessment from one of plaintiff's treating physicians, Dr. Powers, undermines the persuasiveness of the evaluation from Drs. Dolgner and Buber. *See* AR 30. However, although the ALJ notes that the relevant assessment was given directly to plaintiff's mother, who did not retain a copy of it or provide it to the attorney, the ALJ fails to note plaintiff's contention that it was discarded not because it was unhelpful to plaintiff's claims, but instead, because it was not filled out by the doctor. *See* AR 20, 30; *see also* Open, 6. Plaintiff argues that it is not unusual for a doctor to "fail to and/or refuse to respond to requests

for their opinions regarding their patients' functional limitations." Open, 6. Plaintiff argues that the ALJ's inference that the absence of Dr. Powers' assessment can be interpreted as a noteworthy factor undermining the persuasiveness of a treating cardiologist is not based on substantial evidence.

Based on the record, the Court concludes that plaintiff's argument is persuasive: the ALJ makes an inference based on the absence of information. The absence of information is not substantial evidence on this record. Therefore, the Court concludes that the ALJ's presumption that the lack of a supporting opinion from Dr. Powers in the record implies that she does not support plaintiff's claim is not based on substantial evidence as it is not based on such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See Magallanes*, *supra,* 881 F.2d at 750 (quoting *Davis*, *supra,* 868 F.2d at 325-26). Substantial evidence also does not support the ALJ's finding that it is "noteworthy," undermining Dr. Buber's opinion. There is no relevant evidence in the record documenting why this assessment from Dr. Powers is absent from the record (other than plaintiff's contentions).

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ's failure to credit fully the medical opinions of Dr. Buber is not based on substantial evidence. The Court also concludes that the error is not harmless.

**II.     Harmless error**

The Ninth Circuit has "long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An error is harmless if it is "'inconsequential to the ultimate non[-]disability determination.'" *Molina*, *supra,* 674 F.3d at 1117 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

Here, the ALJ failed to credit fully opinions from Dr. Buber, including his opinion, as categorized by the ALJ, that plaintiff "had significant limitations including standing/walking about two out of eight hours, sitting two to four out of eight hours, and absenteeism of 3 or more workdays per month." AR 30 (citing Exhibit 18 F, *i.e.*, AR 3600-601). At plaintiff's administrative hearing, the vocational expert testified that absenteeism of more than one day per month would not be tolerated in competitive work. *See* AR 70. Therefore, the failure to credit fully these opinions is not harmless error as it is not inconsequential to plaintiff's ultimate determination of non-disability. *See Molina*, *supra,* 674 F.3d at 1117 (quoting *Carmickle*, *supra,* 533 F.3d at 1162).

Because the Court concludes that this matter must be reversed and remanded for further evaluation of the medical evidence, the Court will not discuss further plaintiff's contention that the ALJ erred by giving greater weight to the DDS State agency reviewing physicians' opinion regarding functional limitations than to Dr. Buber's opinion. All the medical evidence will be reviewed anew following remand of this matter. However, the Court notes that new State agency consultants' opinions likely will be required as arguably the most relevant objective evidence in plaintiff's CPET results do not appear to have been reviewed by the DDS State agency reviewing doctors relied on by the ALJ in the ALJ's written decision. Similarly, regarding plaintiff's complaint that the ALJ did not wait for the submission of requested post-hearing evidence, all the relevant evidence should be in the record for evaluation on remand. Likewise, plaintiff also will be able to address explicitly the assessment of Dr. Powers on remand before the ALJ.

### III.     Whether the ALJ erred when evaluating plaintiff's credibility.

Plaintiff contends that the ALJ erred by failing to provide sufficient reasons for not incorporating fully plaintiff's subjective claims; however, the Court already has concluded that

the ALJ committed harmful error and the medical evidence should be reviewed anew, *see supra*, Sections I and II. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter. The Court notes that such will allow the ALJ on remand to assess plaintiff's accommodation for college documented by plaintiff with new evidence that the ALJ found in her written decision lacked supporting evidence and stated at plaintiff's hearing could not exist. *See* AR 12-15, 29.

### IV. Whether this Court should reverse with a direction to award benefits or for further administrative proceedings

Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). After concluding at step one that an ALJ has erred, (not harmless error), the Court next should "turn to the question whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (citations omitted). When looking at this issue, the Court should consider if the record is free from relevant conflicts. *See id*.

Plaintiff makes no meaningful argument on this point, instead simply indicates that if "benefits are not paid outright this case should be remanded for a *de novo* hearing." *See* Open, 7; Reply, Dkt. 14, p. 5.

Based on a review of the record, the Court concludes that the record is not free from important and relevant conflicts, such as conflicts in the medical evidence. For example, State agency medical consultants opined that plaintiff could perform light work with frequent postural activities and some limitations, which when adopted, appear to allow for competitive work. *See* AR 25, 30, 31-32. Therefore, this matter should be reversed for further administrative proceedings, including a *de novo* hearing, not with a direction to award benefits. *See id.*

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

DATED this 24th day of August, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 12